IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| George Boyer, | : | |
| Plaintiff | : | Civil Action 2:10-cv-00282 |
| v. | : | Judge Watson |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

### REPORT AND RECOMMENDATION

Plaintiff George Boyer brings this action under 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to consider plaintiff's combined impairments and the findings of the consultative examiner;
- The administrative law judge failed to recognize plaintiff's diabetes as a severe impairment; and
- The administrative law judge failed to properly evaluate plaintiff's obesity.

**Procedural History.** Plaintiff George Boyer filed his application for disability insurance benefits on February 3, 2006, alleging that he became disabled on October 1,

2003, at age 30, by a heart condition, breathing condition, back problems and kidney problems. (R. 141, 118.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On July 22, 2008, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 19.) A vocational expert also testified. On September 22, 2008, the administrative law judge issued a decision finding that Boyer was not disabled within the meaning of the Act. (R. 10-18 .) On January 29, 2010, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Boyer was born March 8, 1973. (R. 107.) He a has a high school education. (R. 122.) He has worked as a bus boy, dishwasher, and general laborer for a temporary agency. He last worked October 1, 2003. (R. 118-19.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Boyer's testimony as follows:

> The claimant alleges heart problems which require him to take three to four nitroglycerine pills a day. He complains of problems with poor circulation and diabetic neuropathy which limit the use of his extremities and require that he be off his feet for a substantial period of the day. He also states that he has breathing difficulties and fatigue.
> . . .
> The claimant testified that he has problems with swelling and that he must spend a significant portion of the day off his feet . . . .
> The claimant testified to requiring the assistance of a home health aide starting the month prior to the hearing. . . . Lastly, the claimant testified that until June 2008, he lived independently with and was the sole

2

>provider for his 13 year-old son who has cerebral palsy. The claimant married in June 2008, but he testified that he continued to provide for the needs of his son and his household now consists of his wife and her two daughters.

(R. 14, 15-16.) Plaintiff further testified that his son occasionally requires the use of a wheel chair. (R. 16.)

**Medical Evidence of Record.** This Report and Recommendation will briefly summarize the relevant medical evidence of record.

**Physical Impairments.**

<u>St. Thomas Hospital</u>. On October 1, 2003, Boyer was admitted to the hospital due to increased swelling, shortness of breath, and lower extremity edema. On physical examination, he had tachycardia, rapid breathing, mild edema and edema above the umbilicus with stria present. Boyer was admitted for IV diuresis and evaluation. Renal ultrasound shoed no obvious hydronephrosis. EKG showed sinus tachycardia. Chest x-ray showed cardiomegaly with clear lungs. On discharge, he was diagnosed with dilated cardiomyopathy and malignant hypertension. (R. 178-79.)

On October 6, 2003, Boyer underwent left heart catheterization, right heart catheterization, left ventriculogram, right and left selective coronary angiography, and right and left selective renal artery angiography. Boyer had essentially normal coronary arteries. He had elevated filling pressures. He had normal cardiac output despite a decreased fraction of 30-40% by visual estimation. There was no significant stenosis of the renal arteries by angiography. Medical management of Boyer's non-ischemic

cardiomyopathy and aggressive medical management of his severe systemic hypertension was recommended. (R. 180-99.)

Akron Cardiology. On September 2, 2004, Boyer was seen for follow-up treatment. A recent assessment of his ejection fraction showed that he had an ejection fraction of 60%, which was normal. He had considerable improvement in LEAVE function since October 2003. Although Boyer still complained of experiencing fatigue, he reported no chest pain, shortness of breath, dyspnea on exertion, palpitations, pre-syncope, orthopnea, or edema. Dr. Bage opined that hypertension could have contributed to his cardiomyopathy, but he indicated that a viral etiology was likely given the rapid return of LEAVE function. Boyer had no headaches, new focal neurological deficits, or sudden changes in hearing or vision. His blood pressure remained well controlled with outpatient treatment. His past renal insufficiency had resolved. Dr. Bage also opined that plaintiff's obstructive sleep apnea was likely secondary to his obesity. (R. 230-31.) On April 15, 2005, Dr. Bage noted that Boyer was doing quite well.  (R. 228-29.)

On March 16, 2006, Boyer reported that his exercise tolerance had improved. He had no chest pain, dyspnea on exertion, PND, orthopnea, edema, palpitations, pre-syncope or syncope. He continued to experience fatigue, which prevented him from participating in some activities. Boyer denied having headaches or new focal neurologic deficits. Dr Bage stated that evidence had shown that plaintiff's cardiomyopathy had normalized.  He had persistent fatigue and atypical chest discomfort. His dyspnea on

4

exertion was inconsistent. Dr. Bage opined that it was unlikely that Boyer had developed significant coronary artery disease, although he had mild disease at the time of his catheterization. Dr. Bage recommended that plaintiff undergo a treadmill nuclear stress test to document of his ejection fraction, to assess the development of coronary disease and to obtain an objective measurement of his exercise tolerance. (R. 245-56.)

On September 5, 2006, Dr. Bage noted that Boyer appeared to be doing well from a cardiovascular standpoint. He had no decompensated heart rate, no angina, no history or documented dysrhythmia, and his ejection fraction had normalized. His blood pressure was well controlled. (R. 275-76.)

<u>Jeffrey Welko, M.D.</u> On September 14, 2006, Dr. Welko evaluated Boyer for the Bureau of Disability Determination. (R. 280-82.) Plaintiff reported that he had had progressively worsening mid-low back pain following a 1994 fall down steel steps. Plaintiff reported back pain centered about the mid to low thoracic spine level. He described the pain as sharp, pinching, and migratory. He reported that the pain shot up and down his shoulder and into his arm. The pain worsened with standing and caused dizziness. Prolonged sitting also exacerbated his pain. He reported that his primary care physician instructed him not to lift more than a few pounds.

Boyer reported that his heart condition required him to take two to three nitroglycerin tablets for shortness of breath. Boyer was recently diagnosed with type II diabetes. On physical examination, plaintiff had mild tenderness over the mid-lower

thoracic spine approximately at the level of T7 and T8 without lateral paraspinal muscle spasm or tenderness.

Dr. Welko diagnosed back pain, possible thoracic disc disease, paroxysms of shortness of breath with history of myocarditis and hypertensive heart disease. Dr. Welko opined that plaintiff's current symptomatology of dyspnea would place him at New York Heart Association functional Class II to III. Plaintiff was also diagnosed with non-insulin dependent diabetes. (R. 280-82.)

A September 14, 2006 x-ray of plaintiff's lumbosacral spine showed that the vertebral bodies and disc spaces were intact. Posterior elements, SI joints, and sacrum were all normal. Chest x-rays were also normal. (R. 283.)

<u>Silvia Vasquez, M.D.</u> On October 18, 2006, Dr. Vasquez completed a physical residual functional capacity assessment. (R. 302-09.) Dr. Vasquez opined that the July 2005 decision of the administrative law judge should be adopted. She noted that Boyer had back pain, paroxysms of shortness of breath with a history myocarditis, hypertension, and diabetes. He had normal range of motion. Catheterization showed clean coronary arteries. His diabetes and hypertension were currently controlled. He was obese. Dr. Vasquez concluded that plaintiff could perform sedentary work. He had unlimited ability to push and pull with his extremities. He could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He had no manipulative, visual, communicative, or environmental limitations. (R. 303.)

<u>Family Practice Center of Akron</u>. On October 24, 2004, Boyer was diagnosed with hypertension, congestive heart failure, and dysthymia. Boyer complained of intermittent chest pain and tingling in his left upper arm. (R. 329-30.) On August 16, 2005, Boyer was prescribed nitroglycerine as needed up to three times per day. Boyer reported pain in his left arm and both shoulders. He used a CPAP and reported increased sleepiness and tiredness. (R. 323-34.) On September 13, 2005, his doctor restricted Boyer from lifting more than five pounds for more than two repetitions. (R. 321.) Boyer reported decreased sleep, low energy, suicidal ideation, and feelings of worthlessness and hopelessness. (R. 322.)

On December 13, 2005, Boyer reported taking nitroglycerine once or twice a day for recurrent chest pain. His chest pain was accompanied by shortness of breath and pressure at times. He reported walking about 4 blocks per day, but in doing so he had chest pain and had to stop. (R. 315.)

<u>Ziman Home Healthcare</u>. On June 19, 2008, Kathy Orr, a nurse, stated that Boyer received approximately 14 hours per week of home health care. She stated he required assistance because of poor endurance, shortness of breath, and other symptoms associated with chronic heart failure, diabetes, and hypertension. (R. 368.) A home health aid provided assistance with personal care, light housekeeping, meal preparation, errands and laundry.

**Psychological Impairments.**

Portage Path Community Mental Health Center. On September 16, 1996, plaintiff was evaluated for anxiety, depression, and stress. Boyer attended five counseling sessions and one psychiatric session. He was diagnosed with major depression, single episode, moderate and a rule out diagnosis of post traumatic stress disorder, acute. He was assigned a current Global Assessment of Functioning ("GAF") of 50 with the highest GAF in the past year as 65. (R. 176.)

Bonnie Katz, Ph.D. On October 12, 2006, Dr. Katz, a psychologist, completed a psychiatric review technique and determined that plaintiff had no medically determinable impairment. (R. 288-301.)

**Administrative Law Judge's Findings.**

1. The claimant has not engaged in substantial gainful activity since the alleged onset date of disability.

2. The medical evidence establishes the claimant's non-ischemic dilated cardiomyopathy, hypertension, status post renal insufficiency, obesity, and obstructive sleep apnea are "severe" impairments within the meaning of the Act and Regulations. The claimant has no medically determinable mental impairment.

3. The claimant's impairments do not meet or equal in the severity of the appropriate medical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's allegations of a complete inability to work are not credible based upon the medical history, findings made on examination, and reports of the treating and examining sources.

5. The claimant has the residual functional capacity to perform, at least, sedentary work. The claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, stand and/or

      walk two hours in an eight hour workday, and sit six hours in the same eight hour period. The claimant has unlimited ability to push and/or pull with the upper and lower extremities, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant has no manipulative, visual, communicative, or environmental limitations. The claimant's obesity does not further limit his ability to perform work related activities, and he has no restrictions resulting from any medically determinable mental impairment.

6. The claimant has no past relevant work.

7. The claimant is currently 32 years old, which is defined as a younger individual.

8. The claimant has a high school education.

9. The claimant has the residual functional capacity to perform a full range of sedentary work (20 C.F.R. § 416.967).

10. Based on the exertional capacity for sedentary work, and given the claimant's vocational factors, a finding of "not disabled" is directed by Medical-Vocational Rule 201.27.

11. The claimant has not been under a "disability", as defined in the Social Security Act and Regulations, at any time through the date of this decision (20 C.F.R. § 416.920(g)).

(R. 59-60.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to consider plaintiff's combined impairments and the findings of the consultative examiner.   Plaintiff argues that the administrative law judge erred by not taking into account the fact that plaintiff is required to take three to four nitroglycerine tablets per day because he frequently experiences severe chest pain. Plaintiff also identified symptoms related to his diabetes that were not considered by the administrative law judge. Plaintiff has had fainting episodes because of medication he takes for hypertension. His sleep apnea makes him increasingly tired and sleepy. The administrative law judge also neglected to consider that Boyer was receiving home health care services. Plaintiff also argues that the administrative law judge should have adopted the

10

examination findings and residual functional capacity assessment of Dr. Welko. The administrative law judge's assessment that plaintiff could perform light work is a departure from a prior decision that concluded plaintiff could perform sedentary work. The administrative law judge erroneously relied on Boyer's participation in a light workout regimen to justify a finding that he could perform light work. A doctor's suggestion to engage in light exercise does not indicate one's ability to perform light work on a sustained basis.

- <u>The administrative law judge failed to recognize plaintiff's diabetes as a severe impairment</u>. Plaintiff argues that the record demonstrates that his diabetes would result in additional limitations on his ability to work. Low blood sugar made him tired, and his blood sugars surged like a roller coaster. He complained of swelling, numbness, and pain in his feet.

- <u>The administrative law judge failed to properly evaluate plaintiff's obesity</u>.  The record demonstrates that on April 15, 2005, plaintiff weighed 342 pounds, and on September 14, 2006, he weighed 298 pounds. These weights are well over the 240 pounds that the administrative law judge referenced. The administrative law judge failed to acknowledge that plaintiff weighed more than 240 pounds for most of the time period relevant to his claim. Plaintiff maintains that the administrative law judge failed to properly evaluate the effects of his obesity on his residual

11

functional capacity because he did not consider the extent of his obesity in his analysis.

**Analysis.**

Combined impairments. The Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. 42 U.S.C. § 423(d)(2)(B). *See* 42 U.S.C. § 1382c(a)(3)(B); *Nash v. Sec'y of Health and Human Serv.*, 59 F.3d 171 (Table) 1995 WL 363381, at *2 (6th Cir. June 15, 1995); *Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993) (citing case law which states that the claimant "should be evaluated as a whole person, and not evaluated in the abstract as having several hypothetical and isolated illnesses."). The Commissioner's regulations provide:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523.

When an administrative law refers to a claimant's combined impairments, he has met his obligation to consider the claimant's impairments in combination. *See, Loy v. Secretary of Health and Human Services,* 901 F.2d 1306, 1310 (6th Cir. 1990). He the administrative law judge did consider Boyer's impairment singly and in combination.

The administrative law judge concluded that plaintiff had the following severe impairments: coronary artery disease, hypertension, diabetes, obesity, and sleep apnea. (R. 12.) Based on these impairments, the administrative law judge concluded that plaintiff had the residual functional capacity to perform work that does not require exertion above the light level; climbing, crouching or crawling; more than occasional balancing, stooping, or kneeling, or exposure to poor ventilation or extremes of dust, humidity, or temperature. (R. 13.)

Plaintiff's assertions that the administrative law judge neglected important facts concerning his impairments are without merit. Rather, the administrative law judge considered plaintiff's complaints but rejected them on the basis that they were not supported in the record. Contrary to plaintiff's assertion, the administrative law judge considered and rejected his statement that he was required to take three to four nitroglycerine tablets per day. He noted that treatment notes from Dr. Bage indicated that plaintiff's heart condition had "normalized." (R. 14.)  Plaintiff maintains that he identified symptoms related to his diabetes that were not considered by the administrative law judge, but the administrative law judge noted his treating doctor indicated that he appeared to be doing well with respect to his diabetes. *Id*.

Plaintiff testified that he had fainting episodes because of medication he takes for hypertension, but the administrative law judge noted that Dr. Bage's notes indicate that his blood pressure was "well-controlled." (R. 14.)  The administrative law judge acknowledged Boyer's complaints that his sleep apnea caused him to be tired and

sleepy. (R. 15.) The administrative law judge noted that Boyer was receiving home health care services, but he did not find this fact indicated that plaintiff's residual functional capacity was more limited than he had found. *Id.*

Plaintiff further argues that the administrative law judge should have adopted the examination findings and residual functional capacity assessment of Dr. Welko and that the administrative law judge's assessment that plaintiff could perform light work is a departure from a prior decision that concluded plaintiff could perform sedentary work. The administrative law judge rejected Dr. Welko's opinion because he concluded that his extreme conclusions were not supported by the treatment record. Instead, the administrative law judge relied on Boyer's treatment notes rather than the conclusions of a one-time examining physician.  The administrative law judge also considered the prior decision and determined that there had been no significant change in Boyer's condition since that time. He concluded that his decision was consistent with the December 15, 2005 decision. The prior decision concluded that plaintiff could at least perform work at the sedentary level. This finding does not indicate that the previous administrative law judge found Boyer limited to only sedentary work. Moreover, the administrative law judge relied on testimony of the vocational expert indicating that there were jobs in significant numbers at the sedentary level that plaintiff could perform. The administrative law judge concluded, however, that there was no basis in the treatment record for limiting plaintiff to solely sedentary work.

Plaintiff's assertion that the administrative law judge erroneously relied on Boyer's participation in a light workout regimen to justify a finding that he could perform light work is without merit. Although the administrative law judge noted that plaintiff's doctor suggested to engage in light exercise, this was not the only basis for concluding that plaintiff could engage in light exertional work.

<u>Diabetes</u>. Plaintiff's argument that the administrative law judge failed to acknowledge that his diabetes constituted a severe impairment is completely without merit. *See* R. 12.

<u>Obesity</u>. Plaintiff argues that the administrative law judge failed to consider the impact of his obesity on his ability to work as required by SOCIAL SECURITY RULING 00-3p. With respect to his obesity, the administrative law judge stated:

> The claimant is obese, and he requires the use of a CPAP machine for sleep apnea exacerbated by his weight problem (Exhibit B3F). The claimant has complained of fatigue, and the record shows that he has daytime somnolence despite his use of the CPAP machine (Exhibit B12F). However, I find this unpersuasive in reducing the claimant's RESIDUAL FUNCTIONAL CAPACITY further than determined today. I have taken into consideration the claimant's complaints of fatigue, but I find no support in the treatment records which would indicate this occurs at a frequency or intensity which would preclude light exertional work on a regular and continuing basis. I have also included a restriction on his climbing, crouching, and crawling and a limitation to occasional on his balancing, stooping, and kneeling which would further accommodate any problems with fatigue he may have because of his weight or sleep apnea.

(R. 15.) The administrative law judge acknowledged that plaintiff's obesity would impact his ability to perform greater exertional levels of work, and he properly

15

formulated a residual functional capacity taking into account these limitations resulting from his obesity.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

                                           s/Mark R. Abel
                                           United States Magistrate Judge